IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROL FARRIS, | ) | CASE NO. 1:07 CV 2477 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| STATE FARM INSURANCE COMPANY, | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| Defendant. | ) | |

## I.  Introduction

Before me[1] in this case involving a dispute over insurance coverage[2] are a motion for

summary judgment filed by plaintiff Carol Farris[3] and a cross-motion for summary judgment

filed by defendant State Farm Mutual Automobile Insurance Co., Inc.[4]  The parties have also

each filed responsive briefs to the motion and cross-motion,[5] as well as briefs requested by

me[6] addressing the applicability of various factors that must be considered by a district court

before exercising jurisdiction in a declaratory judgment interpreting an insurance contract.[7]

---

[1] The parties here have consented to my exercise of jurisdiction, ECF # 9, and the
District Judge has accordingly transferred the matter to me.  ECF # 10.

[2] ECF # 2.

[3] ECF # 3.

[4] ECF # 4.

[5] ECF # 5 (Farris); ECF # 6 (State Farm).

[6] ECF # 12.

[7] ECF # 13 (Farris); ECF # 14 (State Farm).

For the reasons that follow, I find that the exercise of jurisdiction here is proper and further grant State Farm's cross-motion for summary judgment.

## II.  Facts

### A.        The underlying action

The underlying facts are straightforward and undisputed.  Plaintiff Carol Farris, who was insured by defendant State Farm, was involved in an automobile accident in Cleveland on February 1, 2005, in which Farris' vehicle was struck by a vehicle driven by another State Farm policyholder.[8]  Farris suffered injuries as a result of this accident and incurred medical expenses.[9]

The State Farm policy covering Farris at the time[10] provided her with so-called "med-pay" benefits for any medical expenses incurred as a result of an accident.[11]  Simply put, the policy states that if Farris, after being injured and receiving payment for the injury from State Farm, also subsequently receives payment for that injury "from any liable party," then Farris "shall hold in trust for [State Farm] the proceeds of the recovery [from the other

---

[8] ECF # 3 (Farris) at 1; ECF # 4 (State Farm) at 1.

[9] *Id.*

[10] There is no dispute as to what language appears in the applicable policy or whether Farris was covered at the time of her accident.

[11] ECF # 3 at 1; ECF # 4 at 1.

liable party], and reimburse [State Farm] to the extent of [State Farm's prior] payments, costs incurred, and fees of collection."[12]

Here, Farris made a claim under her policy for her injuries and, in October 2006, received a check from State Farm for $2,681.34.[13]  Farris also sued the driver of the other vehicle, alleging negligence, and, in June 2007, settled that case for $7,000 and dismissed her suit.[14]  As it happens, State Farm insured the other driver, and so State Farm funded that driver's 2007 settlement with Farris.[15]

On June 28, 2007, in paying this $7,000 settlement, State Farm sent Farris three separate settlement checks.[16]  One check was for $2,681.34, the amount of State Farm's previous payment to Farris under the policy for her injuries.[17]  State Farm was listed as one of the payees on that check,[18] thus making it impossible for Farris or her attorneys to cash the check without paying State Farm $2,681.34.  Consequently, Farris brought this action.

---

[12] ECF # 4 at 1.

[13] ECF # 3 at 1; ECF # 4 at 2.

[14] *Id.*

[15] *Id*.

[16] ECF # 3 at 2 n1.  In paying the $7,000.00 settlement, State Farm sent Farris three separate checks: one, for $1,960.50, represented the satisfaction of an Ohio Bureau of Workers' Compensation (BWC) lien and was forwarded to the BWC; one was for $2,681.34 and is the subject of this dispute; and the third was for the balance of $2,412.16.  The final check was made payable to Farris and her attorneys and was cashed.

[17] *Id.*

[18] *Id.*

B.      **The present case**

On July 11, 2007, Farris initiated the current suit against State Farm in the Cuyahoga County (Ohio) Court of Common Pleas.[19]  In the suit, Farris alleged that State Farm breached the terms of the settlement agreement by not issuing a check to her in the full amount of $7,000.00 and further had shown bad faith in claiming a right of subrogation from itself.[20] Farris sought a declaratory judgment setting forth her rights under the insurance policy and specifically sought a judgment that State Farm has "no right to any of the $7,000.00 it agreed to pay [her]," whether by right of subrogation or right to reimbursement.[21]  Farris also demanded punitive damages of $500,000.00 and attorney fees.[22]

State Farm removed the matter to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, inasmuch as there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00.[23]

After removal, State Farm filed its answer,[24] contending that it is not asserting a right of subrogation here,[25] but, pursuant to the policy language as interpreted by Ohio

---

[19] ECF # 1 (notice of removal), Ex. A.

[20] *Id.* at ¶¶ 9, 10.

[21] *Id.* at 2.

[22] *Id.* at 3.

[23] ECF # 1 at 1-2.  State Farm is an Illinois corporation; Farris is an Ohio citizen.

[24] ECF # 2.

[25] *Id.* at 3.

courts,[26] it has asserted its right to be reimbursed by Farris for amounts previously paid to her for her injuries.

Farris responded by filing a motion for summary judgment, arguing that, under Ohio law, State Farm is not entitled to "be subrogated to itself on the payment previously made" to Farris.[27]  In that regard, she contended that, notwithstanding State Farm's contention that it is pursuing a right to reimbursement, not a right of subrogation, the facts here show, according to Farris, that since she never actually took possession of the disputed $2,681.34, State Farm cannot now be seeking to have her reimburse it for that sum.[28]  Farris also argued that she is entitled to post-settlement interest on the entire $7,000.00 settlement because State Farm has not fully paid the entire settlement amount.[29]

In its cross-motion for summary judgment, State Farm contends that Farris, by this suit, is impermissibly claiming "that she is entitled to a double recovery, and that she is not obligated to reimburse State Farm for medical expenses paid to Farris which Farris subsequently also recovered from [the other driver]."[30]  State Farm further asserts that Farris "fails to distinguish between subrogation and reimbursement," noting that an Ohio appeals

---

[26] *Id*. at 2, citing *Gerak v. Dentice*, No. 19767, 2000 WL 372316 (Ohio App. 9th Dist., April 12, 2000) (attached as Ex. A).

[27] ECF # 3 at 3-5.

[28] *Id*. at 5.

[29] *Id*.

[30] ECF # 4 at 2 (emphasis in original).

court in *Craven v. Nationwide Mutual Insurance Company*[31] specifically rejected Farris' interpretation of that portion of the policy.[32]

State Farm then contends that additional Ohio appellate authority directly rejects Farris' notion that reimbursement in these circumstances requires that the party in Farris' position actually take possession of an award payment rather than allowing an administrative offset by the insurer, if, as here, the same insurer paid the first settlement as the injured's insurer and the second as the insurer of the tortfeasor.[33]  In view of the case authority, State Farm further maintains that Farris can show no valid reason for post-settlement interest nor support a claim of bad faith against State Farm.[34]

In response, Farris, without citing any contrary Ohio cases, argues that State Farm's contention that it is pursuing a right of reimbursement under the policy is a "legal tap dance," since, she maintains, "the policy does not create a right of reimbursement, but only a right of subrogation."[35]  She argues that any purported right of reimbursement in the policy language, as asserted by State Farm, is either ambiguous or procedural, and further contends

---

[31] *Craven v. Nationwide Mut. Ins. Co*., Case No. 18490, 1998 WL 158980 (Ohio App. 9th Dist., March 11, 1998).

[32] *Id.*

[33] *Id*. at *3, citing *Gerak.  See*, *Gerak*, 2000 WL 372316, at *3.  State Farm's brief here misstate's the case name as "Jerak."

[34] *Id.* at *4.

[35] ECF # 5 at 1.  This phrase was in boldface in the brief.

that, as an adhesion contract, any ambiguous terms or phrasing in the policy must be construed against State Farm, its author.[36]

State Farm, in reply, observes again that Farris' precise argument about this exact language has been rejected by Ohio courts in *Craven* and *Gerak*.[37]  After quoting from the *Gerak* court's own quotation of State Farm's policy language,[38] State Farm here expressly notes that *Gerak* found "the insurance policy contains both a reimbursement provision and a subrogation provision," and thus, "the terms of the insurance policy specifically provide for reimbursement."[39]  Finally, State Farm states that *Gerak* explicitly held that an insurer in this circumstance has the right to offset the amount it previously paid to an insured under the medical payment provision of the policy from the amount of any judgment received by the insured from the tortfeasor and funded by the same insurer.[40]

---

[36] *Id.* at 2-3.

[37] ECF # 6 at 1-2.

[38] *Gerak* involved precisely the same situation as the present case, in which State Farm insured both parties and sought to be reimbursed for amounts it previously paid to its injured insured who then received a settlement from the tortfeasor who was also insured by State Farm.  *See*, *Gerak*, 2000 WL 372316, at *3.  As such, the disputed language on reimbursement in the policy is the same in *Gerak* as it is here.  *See*, ECF # 6 at 2.

[39] ECF # 6 at 2, quoting *Gerak*, 2000 WL 372316, at *3.

[40] *Id.* at 3, citing *Gerak*, 2000 WL 372316, at *3.

### III.  Discussion

**A.      Jurisdiction**

As noted, this matter was removed from Ohio courts to federal court by State Farm pursuant to 28 U.S.C. §§ 1441 and 1446 because it involves parties of different states and an amount in controversy over $75,000.  As such, jurisdiction would be proper here.

However, because Farris' complaint styled this action as one for a declaratory judgment, the parties were instructed[41] to brief[42] the issue of whether this matter meets the criteria set forth by the Sixth Circuit in *Travelers Indemnity Co. v. Bowling Green Professional Associates*[43] for the exercise of diversity jurisdiction in a case for declaratory judgment.

Essentially, Farris declined to take a position as to whether jurisdiction is properly exercised here under the *Travelers Indemnity* factors.[44]  State Farm, however, does argue for the exercise of jurisdiction.[45]

It notes initially that, since Farris' suit seeks monetary damages for an alleged breach by State Farm of Farris' settlement agreement with the other driver, as well as punitive damages for States Farm's purported bad faith in regards to the breach, this matter is not

---

[41] ECF # 12.

[42] ECF # 13 (Farris brief); ECF # 14 (State Farm brief).

[43] *Travelers Indem. Co. v. Bowling Green Prof'l Assocs.*, 495 F.3d 266 (6th Cir. 2007).

[44] ECF # 13 at 2.

[45] ECF # 14 at 4.

exclusively a declaratory judgment action.[46]  Accordingly, State Farm contends that where a federal court must properly exercise mandatory diversity jurisdiction over breach of contract claims, it may not decline to resolve a declaratory judgment issue present in the same case.[47]

I find the analysis of the *Knowlton Construction* opinion sound and persuasive.  That court, in considering whether it was required under the *Travelers Indemnity* factors to decline jurisdiction over declaratory judgment claims in a diversity action and so remand the entire matter back to state court, found remand improper, when those declaratory judgment claims were present in a case also asserting claims for monetary damages, over which the federal court was required to exercise diversity jurisdiction.[48]  Although not here confronting a motion for remand, as in *Knowlton Construction*, the relevant analysis is similar.  Here, Farris' claims for monetary damages arising out of State Farm's alleged breach of her settlement agreement with the other driver, over which this Court must exercise jurisdiction,[49] cannot be adjudicated without considering the issues raised in the declaratory judgment claim, which form the basis for determining whether State Farm's alleged breach was actually a breach or not.  Thus, there is no basis for bifurcating Farris' claims and

---

[46] *Id*. at 2-3.

[47] *Id*. at 3, citing *Knowlton Constr. Co. v. Liberty Mutual Ins. Co.*, No. 2:07-CV-0748, 2007 WL 4365690, at *3 (S.D. Ohio, Dec. 13, 2007).

[48] *Knowlton Constr.*, 2007 WL 4365690, at *3.

[49] *Id.*

sending only the declaratory judgment portion back to state court.  That conclusion, in turn, renders the *Travelers Indemnity* criteria wholly distinguishable from the present matter.[50]

Accordingly, I find that jurisdiction over the entire complaint here, grounded in the mandatory jurisdiction over the claims for breach, is properly exercised in light of the analysis set forth in *Knowlton Construction*, as discussed above.

## B.     Summary judgment

### 1.     *Standard of review – summary judgment*

I note initially that, in this diversity action, the applicable substantive law is state law as determined by the process set forth below,[51] while federal procedural law, specifically that of Federal Rule of Civil Procedure 56, applies.[52]

Accordingly, the standard for prevailing on a motion for summary judgement is well-known and was re-stated by the Sixth Circuit as follows:

> The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  The burden then shifts to the nonmoving party to come forward with evidence showing that there is a genuine issue for trial.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[53]

---

[50] *Id.*, at **2-3.

[51] *Bank of New York v. Janowick,* 470 F.3d 264, 271 (6th Cir. 2006); *Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006).

[52] *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165-66 (6th Cir. 1993).

[53] *Owens Corning v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 257 F.3d 484, 491 (6th Cir. 2001) (citations omitted).

Here, the facts are not disputed, both parties correctly maintain that the matter can be adjudicated by applying the relevant law, and thus the case is well-suited to summary judgment.[54]

## 2.    *Standard of review – choice of law*

Because the insurance policy here does not specify of its own terms which state law is to be applied in construing its provisions,[55] a federal diversity court must, as noted, look to the law of the forum state (Ohio) to determine which state's substantive law should be applied in interpreting provisions of the policy.[56]

Ohio's choice of laws rules require courts to "apply [the] interest-analysis test set forth in the *Restatement (Second) of the Law, Conflicts of Laws* to resolve conflict of laws issues."[57]  Essentially, this test involves initially determining whether an action is deemed one in tort or in contract.[58]  If in tort, the law of the state where the injury occurred presumptively controls.[59]  If the matter is based in contract, the law of the state where the contract was made presumptively applies.[60]

---

[54] *See*, ECF # 3 (Farris) at 2; *see also*, ECF # 4 (State Farm) at 5.

[55] The complete text of the policy is at ECF # 16.

[56] *Bank of New York*, 470 F.3d at 271 (citations omitted); *see also*, *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996).

[57] *Miller*, 87 F.3d at 824 (citation omitted).

[58] *Id*.

[59] *Id.*

[60] *Id.* (citing *Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St. 3d 43, 44, 487 N.E.2d 568, 569 (1986) (*per curiam*).

Here, although Farris was injured in an accident triggering this suit, the case involves whether or not the policy provides State Farm with the right to be reimbursed for the amount it previously paid Farris under the policy for her injuries, such reimbursement to be effectuated with an administrative set-off against the amount for which Farris settled her personal injury suit.  Similar to the Sixth Circuit's reasoning in *Miller*, I find that this matter, although triggered by an accident, involves the scope and extent of the insurer's contractual rights under the policy, and so is properly analyzed for choice of laws purposes as a contract case.[61]

As such, since the contract at issue here was entered into in Ohio, Ohio choice of laws rules dictate that Ohio substantive law applies to its construction and interpretation.[62]

### 3.    Standard of review – Ohio law concerning an insurer's right of reimbursement

I here note first that a federal diversity court applying state law is required to decide an issue the same as it would be if tried in a state court.[63]  This means looking to decisions of the Ohio Supreme Court, or, if that court has not addressed the exact issue presented,

---

[61] *Id.*

[62] Although both parties did not, in their briefs, supply a choice of law and, so, were ordered to inform this Court as to which state law is applicable here, as well as to offer any legal basis for their choice (ECF # 15), only State Farm responded, asserting that Ohio law applies but offering no legal rationale for that choice.  The choice of Ohio law, detailed above, is based on the case sounding in contract but does not change if the case were understood as sounding in tort since the underlying accident occurred in Ohio.

[63] *Kessler*, 448 F.3d at 330 (citations omitted).

seeking to "predict how [the Ohio Supreme Court] would rule, by looking to 'all available data,' including state appellate decisions."[64]

Here, the parties have not cited, nor has my own review revealed, any Ohio Supreme Court decisions construing the policy language at issue here.  However, as noted by State Farm, this precise language was interpreted by two different Ohio appellate courts in *Craven* and *Gerak* in circumstances analogous to the present case.  While Farris vigorously contests these holdings, as well as their applications to this matter, she has also not provided this Court with any contrary decisions by any other Ohio courts, nor even with any contrary case authority from any other jurisdiction construing the same language under similar circumstances.

As such, according to the interpretative rule pronounced by the Sixth Circuit in *Owens Corning*, I conclude that *Craven* and *Gerak* state Ohio law as would be found by the Ohio Supreme Court were it to consider this case.  Thus, the principles set forth in these cases are the rules applicable to determining the motions at bar.

### 4.      State Farm is entitled to summary judgment on all claims

A careful reading of these two Ohio cases can leave no doubt that, despite Farris' protestations to the contrary, (1) a right to reimbursement exists in the language of the policy, (2) this right of reimbursement is distinct from any right of subrogation, and (3) this right may be exercised by the insurer as a set-off against a personal injury lawsuit settlement payable to the insured.

---

[64] *Owens Corning*, 257 F.3d at 491 (citations omitted).

-13-

As the *Gerak* court explained, in construing identical policy language from State Farm, the reimbursement provision of this policy requires Farris, once she receives a settlement of her personal injury lawsuit, "to reimburse State Farm for the medical payments (previously) made to her under the medical payments provision of the insurance policy," and further permits State Farm to effectuate that reimbursement by means of a set-off against the lawsuit settlement.[65]

The plain language of the policy itself states an obligation on the part of the insured to "reimburse us (the insurer)" for payments recovered from liable parties for previously compensated injuries.[66]  In addition, the *Gerak* court's conclusion that the "terms of the policy specifically provide for reimbursement"[67] weighs heavily against Farris' argument that the policy language in this respect does not "specifically say that State Farm has a right of reimbursement" and is, therefore, unenforceably vague and must be construed against State Farm.[68]  Moreover, both *Gerak* and *Craven* make clear that the insurer's contractual right to reimbursement from the insured may be effectuated as a set-off by the insurer against a later settlement amount payable to the insured.[69]  There is no basis in the policy or law for

---

[65] *Gerak*, 2000 WL 372316, at *3.

[66] 3(b)(3) "[I]f the person for whom we make payment recovers from any party liable for the bodily injury, that person shall hold in trust for us the proceeds of the recovery, and *reimburse us* to the extent of our payment."  (Emphasis added).

[67] *Gerak*, 2000 WL 372316, at *3.

[68] ECF # 5 at 2.

[69] *See*, *Gerak*, 2000 WL 372316, at *3; *Craven*, 1998 WL 158980, at *5.

-14-

requiring the insured to permit the insurer to first collect the settlement and then seeking reimbursement.

Moreover, because State Farm's action in enforcing its contractual right to be reimbursed for previously disbursed payments by means of an administrative set-off against the later settlement of Farris' personal injury suit was fully in accord with its rights under the policy, Farris' subsequent claims here for post-settlement interest and punitive damages fail as a matter of law.

## IV.  Conclusion

Accordingly, for the reasons stated above, defendant State Farm's cross-motion for summary judgment is hereby granted as to all claims.  Further, plaintiff Carol Farris' motion for partial summary judgment is hereby denied.

IT IS SO ORDERED.

Dated:  April 14, 2008                    s/ William H. Baughman, Jr.
                                          United States Magistrate Judge